# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| VALLEY TOOL & DIE, INC. | ) | CASE NO.1:18CV2682 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| FASTENAL COMPANY | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court on Defendant's Motion to Stay Pending
Arbitration (ECF # 8). For the following reasons, the Court grants Defendant's Motion.
Accordingly, this matter will be removed from the Court's active docket and may be
reinstated upon motion of either or both parties following arbitration if unresolved issues
remain. In light of this Opinion and Order Plaintiff's Motion for Injunctive Relief is moot.
(ECF # 2).

## I. PROCEDURAL BACKGROUND

On November 18, 2018, Valley Tool & Die, Inc. ("Valley Tool") filed its Complaint,
alleging, *inter alia*, that Fastenal Company ("Fastenal") violated Section 43 of the Lanham
Act for Unfair Competition, False Designation and False Advertising, Ohio's Deceptive
Trade Practices Act and Ohio trademark infringement and misappropriation of trademark

laws.  Valley Tool claims that Fastenal was selling a counterfeit version of Valley Tool's

signature fastener part, the Valco A-140 ("A-140").  Valley Tool moved for injunctive relief

to halt Fastenal's production and sale of the A-140 fasteners.  Fastenal filed the present

Motion to stay litigation pending the outcome of arbitration between the parties.  Fastenal

argues that arbitration is compelled due to a valid agreement between the parties containing a

broad arbitration clause.

## II. BACKGROUND FACTS

Valley Tool is located in North Royalton, Ohio.  It employs approximately 50 people

and designs and manufactures fastener parts used in a broad variety of industrial and

consumer products.  Valley Tool owned the trademark "Valco" from 1975 to 1983.  The U.S.

Patent & Trademark Office cancelled Valley Tool's trademark registration of Valco in 1983

for failure to prove use in commerce.  Valley Tool recently reapplied to trademark Valco.  Its

second application is currently pending.

Fastenal, among other things, manufactures and distributes metal fasteners.  In

connection with this business, Fastenal purchased snap button fasteners, including the A-140,

from Valley Tool.  Fastenal and Valley Tool have had a business relationship since at least

2012 and Fastenal has purchased hundreds of thousands of fasteners from Valley Tool during

that time.  Each time Fastenal made such a purchase, it was by purchase order.  Each purchase

order used by Fastenal contained language incorporating by reference Fastenal's terms and

conditions.  The arbitration provision at issue in this case was a part of these terms and

conditions.

On or around October 7, 2015, Fastenal obtained the schematic design for the A-140

from Valley Tool. Valley Tool alleges that the A-140 schematic design was not provided to Fastenal in the context of a sale or transaction. Rather, it was provided to Fastenal because Valley Tool understood that Fastenal needed the design for purposes of matching a potential customer's specifications.

Approximately three years after providing the schematic design, Valley Tool discovered counterfeit A-140 fasteners contained in consumer goods, including the "Simpson Megashot MS60921" power washer, sold by FNA Group Inc. Valley Tool alleges that it traced the supply of the A-140 fasteners used in the production of this power washer back to Fastenal.

On November 19, 2018, Valley Tool filed its Complaint, alleging that Fastenal violated state and federal law. Valley Tool also moved for injunctive relief to halt Fastenal's production and sale of the A-140.

Since filing its Complaint, Valley Tool claims that it has learned that the A-140 fasteners were imported in the United States by an Asian subsidiary of Fastenal, FASTCO Trading Company, Ltd. ("Fasco"). Valley Tool also alleges that the A-140's were fabricated either by FASTCO, or by a third-party manufacturer in China at the direction of Fastenal.

After the present litigation commenced, Fastenal reached out to Valley Tool to explore settlement. In that context, the parties agreed to extend the time for Fastenal to file its Answer and respond to Valley Tool's Motion for Injunctive Relief. Valley Tool also alleges that the parties reached an informal agreement by which Fastenal would produce documents sufficient for Valley Tool to evaluate its settlement position and that Fastenal would undertake measures to halt any further importation of the A-140's. Shortly thereafter,

3

Fastenal filed the present Motion to Stay Pending Arbitration.

## III. LAW AND ANALYSIS

**The Law Governing Arbitration Clauses**

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4. The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties']

agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2003).

In determining whether to grant motions to dismiss or stay proceedings and compel arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted and whether Congress intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000). Ohio law favors the arbitration of disputes. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). An agreement to arbitrate will be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185 (2006).

"The Supreme Court has repeatedly held that contracts to arbitrate federal statutory claims are enforceable unless 'Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). Moreover, the United States Supreme Court has repeatedly emphasized its holding that an arbitration forum adequately preserves statutory rights and can

5

satisfactorily adjudicate statutory claims. *Circuit City*, 532 U.S. at 122-23; *Green Tree Fin. Corp.*, 531 U.S. at 90; *Gilmer*, 500 U.S. at 35.

**An Application of the Law**

    **1. Whether the Parties Agreed to Arbitrate**

Fastenal's purchase order of the A-140 prominently contained language incorporating Fastenal's terms and conditions by reference. By accepting and fulfilling Fastenal's purchase order, Valley Tool assented to Fastenal's terms and conditions contained therein.

The terms and conditions contained in Fastenal's purchase order included a mandatory arbitration provision for any and all disputes arising between the parties stating:

> All disputes, controversies or differences between the parties that are not
> settled by negotiation shall be decided in accordance with the Commercial
> Rules of the American Arbitration Association and judgment will be entered
> on the award. The arbitrator will be bound by the express terms of the
> Agreement. The site of arbitration will be a mutually agreeable location in
> Minnesota and the arbitrator(s) will be bound by the applicable law of the State
> of Minnesota.

Valley Tool accepted these terms and conditions by reference when it fulfilled Fastenal's purchase order of the A-140's. The Ohio Uniform Commercial Code recognizes that valid contracts are formed between parties based on terms and conditions incorporated in purchase orders. *Mataline Corp. v. PPG Indus., Inc.*, 225 F.3d 659 (6th Cir. 1999). In *Mantaline*, the court found an arbitration provision contained in a purchase order valid upon the delivery of goods. *Mantaline*, 225 F.3d at 659. Similarly, Valley Tool effectively assented to the arbitration provision above when it delivered the A-140 fasteners to Fastenal. Valley Tool assented to these terms and conditions each time Fastenal provided a purchase order.

The fact that the terms and conditions were incorporated by reference in the purchase order does not change this result. Both parties before the Court are sophisticated businesses with equal bargaining power. Further, each purchase order prominently contained language incorporating Fastenal's terms and conditions. Valley Tool did business with Fastenal for many years and thus had multiple opportunities to review or negotiate the above language. It chose not to do so. Therefore, the Court finds that Valley Tool agreed to arbitrate all disputes covered by the language of its longstanding agreement with Fastenal.

### 2. The Scope of the Agreement

Valley Tool and Fastenal disagree about the scope of the arbitration clause. Valley Tool alleges that its claims are outside the scope of the arbitration clause because the "referenced documents govern sales transactions between the parties; they do not contemplate counterfeiting or theft, and thus do not reflect an intent to arbitrate the present claims." (ECF DKT #11, at 1-2). Valley Tool's claim that Fastenal used a "counterfeit" A-140 is, however, in dispute. Fastenal claims that it did not distribute counterfeit A-140's because a counterfeit good "may only exist when there is a federal registration protecting the mark used." (ECF DKT #12, at 1). Further, there is no allegation that Fastenal engaged in behavior that would constitute criminal "theft." Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. V. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The arbitration clause before the Court contains extremely broad language and governs "All disputes, controversies, or differences between the parties..." Valley Tool's

7

allegations, which are indeed in dispute, fall squarely within this language because Fastenal

claims that each and every legal allegation in the Complaint lacks merit. In addition, the

arbitration clause became effective as a result of Valley Tool's sale of the A-140. The A-140

is precisely what is at issue here. This demonstrates that, even though the arbitration clause is

not limited to disputes surrounding the A-140, the parties intended for it to control such

situations and Valley Tool's repeated assertions that its claims fall outside the scope of the

arbitration clause are misguided.

### 3. Congressional Intent

The language of the FAA, and the judiciary's interpretation of that language leave no

doubt regarding Congress's intent with respect to arbitration clauses. The FAA provides that

an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. The FAA further mandates that when the Court is "satisfied that the

making of the agreement for arbitration ... is not in issue, the court shall make an order

directing the parties to proceed to arbitration in accordance with the terms of the agreement."

9 U.S.C. § 4. Additionally, the Sixth Circuit has held that the "FAA establishes a liberal

policy favoring arbitration agreements, and any doubts regarding arbitrability should be

resolved in favor of arbitration over litigation." See *Fazio v. Lehman Bros., Inc.*, 340 F.3d

386, 392 (6th Cir. 2003).

Thus, granting Fastenal's Motion is consistent with legislative intent and the Sixth

Circuit's interpretation of the law regarding the enforceability of arbitration clauses.

### 4. Whether to Stay the Remainder of Proceedings

Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2003). Consistent with this command from Congress, the Court will stay the present proceeding until arbitration is complete. Further, Valley Tool's Motion for Preliminary Injunction is moot because the contract does not include an exclusion for such preliminary relief and the Commercial Rules of the AAA empower arbitrators to provide such relief.

## IV. CONCLUSION

Fastenal and Valley Tool have agreed that all "disputes, controversies, or differences between the parties...shall be decided in accordance with the Commercial Rules of the American Arbitration Association..." This broad arbitration clause was incorporated by reference in a purchase order for the very product at issue - the A-140 fastener. Further, there is no evidence of unequal bargaining power or any other legitimate contractual bars or defenses. Therefore, consistent with legislative intent and the law of the Sixth Circuit, this Court grants Fastenal's Motion to Stay Pending Arbitration. This matter will be removed from the Court's active docket and may be reinstated upon motion of either or both parties following arbitration if unresolved issues remain. For these same reasons, Plaintiff's Motion for Injunctive Relief (ECF # 2) is moot.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
Dated: February 12, 2019          United States District Judge